**Joseph A. FARRO and Maria Farro, Appellants,**

v.

**TAX CLAIM BUREAU OF MONROE COUNTY and S2M Associates.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 1997.

Decided Dec. 9, 1997.

Gerald J. Geiger, Stroudsburg, for appellants.

Steven D. Gladstone, Tannersville, for appellees.

Before FLAHERTY and LEADBETTER, JJ., and SILVESTRI, Senior Judge.

FLAHERTY, Judge.

Joseph and Maria Farro (the Farros) appeal from an order of the Court of Common Pleas of Monroe County (trial court), dated January 15, 1997, denying their petition to set aside the 1994 tax sale of their real property identified as Tax Parcel No. 17/15C/1/30 (subject property). We affirm.

The relevant facts in this case are not in dispute. The Farros purchased the subject property by a deed dated August 10, 1987, which was recorded in the Monroe County Recorder of Deeds office on October 13, 1987. As a result of delinquent taxes for the 1989 tax year, the Farros' property was sold, without proper notice to the Farros, to Raymond Lavigne (Lavigne) at a tax sale on September 17, 1991, and the Monroe County

Tax Claim Bureau (Bureau) forwarded a deed for the subject property to Lavigne who recorded it.

When the Farros discovered the sale, they filed a petition to set aside the sale. The trial court determined that the Bureau did not comply with the notice provisions of the Real Estate Tax Sale Law (Act), Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101–5860.803, and entered an order, dated June 25, 1992, setting aside the sale. The trial court's order also directed the Farros to forward the amount of the purchase price of the property and the costs of the tax sale to the Bureau and to provide evidence to the Bureau that all taxes were paid and current. Additionally, the trial court's order directed Lavigne to execute a quitclaim deed in favor of the Farros once the Bureau reimbursed him for the money that he had paid for the subject property.

By letter dated August 25, 1992, Steven Gladstone (Gladstone), counsel for Lavigne, delivered a quitclaim deed to the Farros' counsel requesting that the deed be held in escrow until Lavigne was reimbursed for all the tax monies paid at the sale. By letter dated November 17, 1992, Gladstone authorized counsel for the Farros to record the quitclaim deed. Farro's counsel, however, did not record the quitclaim deed until April 21, 1995. Although the Farros apparently paid Lavigne's purchase price to the Bureau, they failed to furnish evidence to the Tax Claim Bureau that all taxes due and owing were paid and current and failed to pay any of the 1992 taxes. (R.R. 72a, Finding of Fact No. 3). In Stipulation No. 1, the complete file of the Bureau is set forth in Exhibit "A". Although the exhibits in the Reproduced Record are not marked as such, since numerous notices and tax claims are found between the last page of the Stipulation and the copy of the 1987 deed which is referred to in the Stipulation as Exhibit B (but not marked), such pages must be assumed to be the "complete file" of the Bureau. There is only one reference to the Farros, dated September 24, 1992, which is an unsigned form "Installment Agreement" for Joseph Farro to pay taxes for the year 1991 in two installments which also contained a new address for the Farros "per Joseph 9/24/92," which address is also set forth in Paragraph 1 of the petition. There is no record that the Farros paid either the September, 1992 installment or the October, 1992, installment or that he ever agreed to the terms of the unsigned installment sale agreement. The other notices by the Bureau were all directed to Lavigne for delinquent taxes for the years 1991, 1992, and 1993 with notice of the 1994 tax sale based upon those delinquencies and indicate no taxes were ever paid for the 1991 calendar year by Farro. Meanwhile, between the date of the first tax sale, September 17, 1991, and April 21, 1995, the property owner of record was Lavigne to whom all tax bills, delinquency notices and tax sale notices were mailed. On October 19, 1994, the subject property, which was still recorded only in the name of Lavigne, was sold a second time by the Bureau to S2M Associates at a tax sale for the collection of delinquent taxes incurred in the 1992 tax year. S2M Associates is the name of a firm owned by Gladstone, Lavigne's counsel, who admittedly acted as a straw man for Lavigne in this latter sale.

The Farros, seeking to have the second tax sale invalidated due to lack of notice, thereafter filed a petition to set aside the second tax sale with the trial court. This time, the trial court denied the Farros' petition and determined that the Farros were not entitled to notice of the second tax sale because they failed to record the quitclaim deed prior to the second tax sale which recording would have established their ownership of record in accordance with the Act and, further, were not entitled to further equitable relief because the Farros refused to comply with the express conditions of the first court order granting relief by their persistent refusal to pay any taxes on the premises. This appeal followed.[1]

---

1. Our scope of review is limited to determining whether the trial court abused its discretion, rendered a decision with lack of supporting evidence or clearly erred as a matter of law. *Dol-* *phin Service Corp. v. Montgomery County Tax Claim Bureau,* 125 Pa.Cmwlth. 220, 557 A.2d 38 (1989).

Farro raises the following issues for our review: (1) whether the trial court erred in concluding that the Farros' failure to record the quitclaim deed foreclosed their entitlement to notice of the second tax sale; and (2) alternatively, whether the Bureau's actual and constructive knowledge of the Farros' location and of the fact that the Farros were the legal owners of the subject property required the Bureau to notify the Farros of the second tax sale.

I

The Farros argue that the trial court erred by relying on the Farros' failure to record their quitclaim deed in concluding that the Farros were not record owners of the subject property and therefore, were not entitled to notice as provided in Section 602 of the Act, 72 P.S. § 5860.602. The Farros contend that, in order for a tax sale to be valid, notice is required to be given to the owners of the property by publication, posting, and certified mail. If any of the three types of notice are defective, the sale is void. *Krumbine v. Lebanon County Tax Claim Bureau*, 153 Pa.Cmwlth. 457, 621 A.2d 1139 (1993), *aff'd*, 541 Pa. 384, 663 A.2d 158 (1995). The Farros further maintain that the basis for the Farros' title is the deed granting the subject property to the Farros on August 10, 1987 from other persons. The Farros contend that the quitclaim deed merely renounced an interest in the property held by Raymond Lavigne.

Whether the Farros were entitled to notice of the second tax sale of 1994 for the delinquent 1992 taxes depends on whether they are owners of the subject property, as defined in Section 102 of the Act, 72 P.S. § 5860.102, or whether Lavigne was the owner of the subject property according to that

definition. Section 102 defines the term "owner" in the following manner:

■ [T]he person in whose name the property is last registered, if registered according to law, or, [2] if not registered according to law, the person whose name last appears as an owner of record on any deed or instrument of conveyance recorded in the county office designated for recording and [3] in all other cases means any person in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, or the reputed owner or owners thereof, in the neighborhood of such property ....

72 P.S. § 5860.102.

In *Grace Building Co., Inc. v. Lanigan*, 15 Pa.Cmwlth. 643, 328 A.2d 919 (1974), this court stated that the term "registered" is not the equivalent of the term "recorded" for purposes of the foregoing definition. *Id.* 328 A.2d at 921. The term "registered" refers to the process of establishing and maintaining a current record of all real estate transactions in the office of the county commissioners so that the current ownership can be ascertained without burdensome and time-consuming searches. *Id.*

■ Monroe County is a county of the fifth class, 112 Pa. Manual 6–35, which is governed by The County Code.[2] Although other county codes mandate that larger counties must maintain a registry of property ownership, there is no provision in The County Code or any other statute requiring Monroe County to maintain such a registry.[3] Larger counties that are required to maintain a registry of property ownership, by virtue of the populations therein, do not have the option to dispense with the establishment

2. Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. §§ 101–2901. Section 102(b) of this act provides that The County Code applies to all counties of the third, fourth, fifth, sixth, seventh, and eighth classes. 16 P.S. § 102(b).

3. Section 708 of the Second Class County Code, Act of July 28, 1953, P.L. 723, *as amended, added by* the Act of October 22, 1959, P.L. 1358, 16 P.S. § 3708, provides that any interest acquired in real estate must be registered in the office of the county commissioners. For example, this provision has been implemented in Allegheny County,

a county of the second class, by the county commissioners operating the Office of Deed Registry, which operates separate and apart from the Recorder of the Deeds. Additionally, Section 1 of the Act of May 2, 1899, P.L. 162, *as amended*, 21 P.S. § 321, pertaining to deeds and mortgages in all counties, provides that, in counties with a population of over 500,000, all deeds and conveyances of real estate are to be registered in the office of the county commissioners before being recorded in the office of the recorder of deeds.

and maintenance of a registry. Therefore, the omission of such a mandatory registration provision in The County Code governing Monroe County fortifies the conclusion that Monroe County was not under a duty to maintain a registry. The first clause of the definition of "owner" in Section 102 of the Act, therefore which provides that the owner is the person in whose name the property is last registered, is not applicable. *Geier v. Tax Claim Bureau of Schuylkill County*, 527 Pa. 41, 44–45, 588 A.2d 480, 482 (1991). Instead, the second clause governs the identification of the ownership of property when there is no place to register the deed, such as in Monroe County, in which case "the person whose name last appears as an owner of record on any deed or instrument recorded in the county office designated for recording." 72 P.S. § 5860.102.

█ The definition of "owner" in the Act requires us to examine whether the Farros were the last individuals to appear as the owners of record on any deed or conveyance in the office of the recorder of the deeds in Monroe County, or whether Lavigne was the last individual to appear as the owner of record in that county. The trial court relied on this court's decision in *Grace*, which held that the "owner" to be notified is the party with the most recently recorded deed in its favor prior to the tax sale. *Grace*, 328 A.2d at 922–23. The trial court specifically found that Lavigne was the record owner of the subject property at the time of the second sale because the Farros failed to file the quitclaim deed provided by Lavigne, which filing would have established the Farros as owners of record. Pursuant to *Grace*, the trial court concluded that Lavigne was the only party entitled to notice of the second tax sale.

The Farros erroneously argue that the quitclaim deed is of no significance because it is not the source of the Farros' title. The Farros maintain that the trial court's order which set aside the tax sale voided Lavigne's interest in the property and, therefore, the quitclaim deed was unnecessary to give any interest because they retained their full ownership interest and rights in the subject property as a result of the court's order.

This contention, however, dramatizes the difference between two concepts of ownership, the feudal concept of ownership derived from seisin and the later concept of ownership derived from official recordation, and ignores the concept of ownership as defined in the Act. Nevertheless, the fact remains that Lavigne was the last owner of record because he properly recorded his ownership interest in the subject property when he acquired the property at the first tax sale. The Act expressly states, as does this court's opinion in *Grace*, that the latest owner of record prior to the tax sale is the owner for purposes of the Act and, therefore, for purposes of receiving notice under Section 602, 72 P.S. § 5860.602. *Id.* Under the plain meaning of the relevant statutory provisions, the Farros were not the record owners under the Act and, therefore, they were not entitled to notice of the second tax sale.

## II

█ Alternatively, the Farros contend that the trial court erred in concluding that they were not entitled to notice because the Bureau had actual knowledge of their ownership of the subject property. The Farros argue that they were entitled to notice for the following reasons: the Bureau's file has a copy of the trial court's order setting aside the first tax sale, personnel within the Bureau were copied on correspondence from Gladstone that confirmed the settlement which resulted in the Farros being able to keep the subject property after the first tax sale, the Bureau also has notes showing the Farros' correct address, and the Bureau was a party to the proceeding which involved the setting aside of the first tax sale.

The "complete file" of the Bureau furnished by the Reproduced Record of the Appellants does not contain either a copy of the trial court's order setting aside the first tax sale or copies of any such correspondence from Gladstone. Although the Bureau was a party to the first tax sale, it is not bound to maintain such file from June 24, 1992, *ad infinitum*, especially in view of the Farros' failure to fulfill the conditions of the 1992 order requiring them to pay all the back

taxes and the current taxes besides restoring the purchase price.

The Bureau file does contain the notation of the Farros' new address on the September, 1992, installment agreement, but, again, the Farros did not execute the agreement so it constitutes merely a notation of the new address of a previous owner of record, to wit, the Farros.

■ The Act does not require the Bureau to notify anyone not of record with an interest in property subject to a tax sale. Although the notice provisions of the Act must be strictly construed in order to guard against the deprivation of property without due process of law, *Teslovich v. Johnson,* 486 Pa. 622, 406 A.2d 1374 (1979), the Bureau's duty to search for owners' correct names and addresses in a tax sale is limited to owners of record as defined by the Act. The Bureau only has the burden of proving that it complied with all statutory notice provisions and applied common sense business practices in ascertaining proper addresses. *Rossi v. Indiana County Tax Claim Bureau,* 90 Pa. Cmwlth. 255, 494 A.2d 526 (1985).

In the instant case, although the Farros argue that the Bureau knew that they were the latest owners of the subject property, there is no evidence in the record to substantiate this claim. The Bureau, therefore, complied with all statutory and due process requirements when it notified Lavigne, the record owner of the subject property, of the upset sale.

In *Tracy v. County of Chester, Tax Claim Bureau,* 507 Pa. 288, 489 A.2d 1334 (1985) and *Geier,* our Supreme Court determined that due process requires the tax bureaus to go beyond the mere statutory requirements in certain cases by investigating and ascertaining the identity or whereabouts of the latest owners of record of property subject to an upset sale for purposes of providing notice to that party. In *Tracy,* our Supreme Court interpreted an older version of the definition of "owner." [4] In *Tracy,* our Supreme Court

affirmed this court's determination that a tax sale was void for failure to properly notify one of the identified owners of record of the subject property. The *Tracy* Court held that, although the statutory definition only required the taxing bureaus to inspect the registry or to determine who held the property in an open, notorious and peaceful manner, due process required the tax bureau in that case to investigate the office of the recorder of deeds, even though the statute did not require as much at that time.

Justice Flaherty, writing for the Court in *Geier,* stated that, based on the *Tracy* decision, "strict compliance with the tax sale law does not necessarily satisfy the demands of due process." *Geier,* 527 Pa. 41, 46, 588 A.2d 480, 483. Justice Flaherty further stated that "[t]he principle is that reasonable efforts must be made to determine the correct names and addresses of persons identified as owners of record of property which is scheduled for an upset sale." *Id.* The *Geier* Court stated that where "the record shows that the Bureau had the names of both owners in its records, but sent only one notice[,] we conclude that the Bureau did not make a reasonable effort to notify all of the owners." *Id.* at 46–47, 588 A.2d at 483. The Court then held that "even though the Bureau technically complied with the notice requirements of the tax sale statute, the Bureau failed to satisfy the demands of due process in conducting the sale." *Id.* at 47, 588 A.2d at 483.

■ The essence of both *Geier* and *Tracy* is that due process requires the taxing bureaus in the Commonwealth to conduct reasonable investigations to ascertain the identity and whereabouts of the latest owners of record of property subject to an upset sale for purposes of providing notice to that party. However, the bureaus' duty to investigate such matters is confined to determining the owners of record and then to use ordinary common sense business practices to ascertain proper addresses where notice of the tax sale may be given. In the case *sub*

---

4. The previous definition prior to 1986, found in Section 102 of the Act of July 7, 1947, P.L. 1368, did not include the provision which currently states that where there is no registered owner, the owner is "the person whose name last appears as an owner of record on any deed or instrument of conveyance recorded in the county office designated for recording," found in Section 102 of the Act of July 3, 1986, P.L. 351, 72 P.S. § 5860.102.

*judice*, however, the issue of the determination of the owner must be distinguished from the service of notice of the tax sale on the owner. Where the owner of record is clear to the public from the deed filed by Lavigne in the Recorder's office, the Bureau was not required to search through its file as any other record to determine the owner as defined in the Act. Thereafter, however, *Tracy* and *Geier* require the Bureau to go beyond the mere ceremonial act of notice by certified mail when such notice is obviously not effectively reaching the owners of record. Due process does not require the Bureau to perform the equivalent of a title search or to make decisions to quiet title where the Act defines the owner as the person designated in the last recorded deed even as though there is a reference in the Bureau's file to a former owner which the Bureau may or may not be aware of four years after an order was entered to transfer title after certain conditions were met, especially when the Farros failed not only to file the quitclaim deed which filing would still have been prevented because they were also required to pay all back and current taxes which they never did. On the other hand, the Legislature was fully justified in designating the Recorder's office, since it is available to the public and operates under established procedures upon which the public and government agencies can rely, to verify ownership of real property. The Bureau's files, however, are not intended or designed to establish reliable interests in property. Our Supreme Court has not even suggested that the tax bureaus should rely upon their own files as resources to determine ownership of property for purposes of providing notice of an upset sale.

■ The *Geier* Court expressly stated that only where the record showed that the Bureau had the names of the property owners who were not notified of an upset sale could a court conclude that the Bureau failed to make a reasonable effort to effectuate notice. *Geier*, 527 Pa. at 46–47, 588 A.2d at 483. In the instant case, there is no evidence that the Bureau had actual knowledge that the Farros were the real owners of the subject property and there is substantial evidence that the Farros failed to comply with the court order of June 29, 1992, which would have established their ownership of record if they had paid their back and current taxes and filed the quitclaim deed. The trial court sitting as the chancellor in equity being requested to grant the equitable remedy of setting aside a tax sale, did not abuse his discretion in refusing to grant additional equitable relief of the same kind when those seeking equity failed to comply with the conditions of the previous decree that conditioned the equitable relief granted to the Farros to set aside the first tax sale provided the Farros furnished evidence to the Tax Claims Bureau that all taxes were paid and current. Since no evidence of payment of all taxes due and owing was in the Bureau's file, nor is there any other evidence of such payment in the record, the Chancellor did not abuse his discretion by denying further equitable relief to petitioners who ignored his previous order.

We, therefore, hold that the Bureau met its statutory duty and the requirements of due process by notifying Lavigne, the record owner, of the upset sale even though it failed to notify the Farros.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 9th day of December, 1997, the order of the Court of Common Pleas of Monroe County, at No. 1425 CIVIL 1996, dated January 15, 1997, is hereby affirmed.