**In re Dauphin County Tax Sale**

C.P. of Dauphin County, no. 3924-1-S-1999.

*David DeLuce,* for petitioner.
*Norman Yoffe,* for respondent.
*F.R. Martsolf,* for Tax Claim Bureau.
*Michael Sedor* and *William J. Peters,* for Authority.

TURGEON, *J.,* February 18, 2000—Currently before the court is Patricia Latham's petition to set aside an upset tax sale involving a parking lot sold to Vincent Bianchi September 24, 1999. The issues presented are whether a person whose property is subject to a condemnation proceeding has standing to seek to set aside a subsequent tax sale involving the property, and if so, whether the sale should be set aside for lack of proper notice.

## FACTS AND PROCEDURAL BACKGROUND

Since 1972, petitioner had been joint owner with her mother, and after her mother died in 1982, sole owner of a Harrisburg city parking lot designated as 138 Cranberry Street. For many years it was leased to First Federal Savings and Loan Association which was responsible for paying all real estate taxes under the lease. First Federal used the unimproved lot to provide employee parking, which was located behind its offices at 234 North Second Street. The lease was later assumed by Harris Savings Bank when it merged with First Federal in April 1996.

On February 3, 1999, the Harrisburg Parking Authority filed a declaration of taking (no. 496-S-1999) whereby it condemned the subject property for the purpose of constructing a parking garage thereon. Notice of the condemnation was recorded in the Dauphin County Recorder of Deeds office. The authority properly notified petitioner at her Florida address. She filed timely preliminary objections to the declaration of taking on March 12, 1999, which are currently pending. While pursuing settlement of the condemnation action with the authority, petitioner discovered the tax claim bureau had sold her property to respondent at a September 24, 1999 tax sale.

The facts relevant to the tax sale proceeding are as follows: Historically, all real estate tax bills were sent in petitioner's and/or her mother's name in care of First Federal at 234 North Second Street which paid the taxes through 1996. Petitioner, who became a Florida resident in 1994, never received any tax notices. In March 1997, the tax collector (City of Harrisburg) informed the Dauphin County tax assessment office of a mailing address change from 234 North Second Street to 138 Cranberry Street.[1] The tax assessment office was also informed by a "mortgage company" in March 1998 to remove reference to First Federal from the address.

Presumably, the tax collector then sent the 1997 tax bill to 138 Cranberry Street care of First Federal. The record did not disclose whether that bill was received by the bank. Nevertheless, real estate taxes were not paid that year. On March 9, 1998, tax claim bureau sent notice of this tax delinquency by certified mail to petitioner

---

1. At the location of the parking lot, Cranberry Street is basically an alley between several contiguous parking lots in downtown Harrisburg.

and her mother, care of First Federal, at the 138 Cranberry Street address. The notice was accepted by an unknown person who signed a return receipt.[2] The tax claim bureau also allegedly posted a tax claim notice on the parking lot September 2, 1998. None of these notices were effective in alerting petitioner or Harris Savings Bank and the 1997 taxes were unpaid.

Consequently, the tax claim bureau listed the property for tax sale in 1999, and on August 23, 1999 sent petitioner the required tax sale notice by certified mail to the parking lot address, which was returned "no such number." The tax claim bureau attempted to find petitioner's correct address by researching the Harrisburg area phone book, the Harrisburg city directory and Harrisburg city computer tax records. They found none and thus mailed a second notice on September 13, 1999 to the Cranberry Street address which was also returned and stamped "attempted, not known." The tax claim bureau also claimed to have posted the tax notice on the property September 2, 1999. On September 24, 1999, the property was sold to respondent Bianchi for $14,344.71.[3]

---

2. It would appear that the notice was delivered to Harris Savings, because within a week or so thereof, the tax assessment office was informed by a "mortgage company" to remove First Federal's name from the mailing address. The tax claim bureau asserted in its pleadings that it was First Federal which informed it to remove its name, however, at that time, First Federal had already merged with Harris Savings.

3. In addition, on September 29, 1999, the tax claim bureau sent notice via certified/first-class U.S. mail to the parking lot address, that the property had been sold and advising petitioner she could file objections and exceptions to the tax sale no later than 30 days after the trial court's confirmation nisi of the tax claim bureau's consolidated return. Of course, that mailing too was returned and stamped "no such number."

On October 22, 1999, shortly after becoming aware of the tax sale, petitioner filed her petition to set aside, claiming she was not provided proper notice of the sale. Both respondent Bianchi and the tax claim bureau answered the petition, claiming the tax sale proceeding was accomplished in accordance with the law. Furthermore, respondent alleged he purchased the property without notice of the condemnation. He asserts that his title search on the property failed to reveal the recorded condemnation because it was not indexed by the recorder of deeds office as required by law and that this failure was attributable to the authority.

## LEGAL DISCUSSION

Petitioner argues the tax sale must be set aside since the tax claim bureau failed to adhere to the notice requirements set forth under the Real Estate Tax Sale Law. 72 P.S. §5860.101 et seq. Respondent argues, however, that petitioner lacks standing to raise this issue since only the owner of the property sold may petition to set a tax sale aside, and the authority, not petitioner, was the owner at the time of the tax sale.

### *Petitioner's Standing*

The Eminent Domain Code provides that upon filing a declaration of taking, title passes from the condemnee to condemnor. 26 P.S. §1-402(a). Respondent thus argues that when title transferred to the authority, petitioner lost both her ownership and possessory rights to the parking lot and cannot subsequently contest the tax sale. Petitioner responds that even though a condemnor obtains title under the Eminent Domain Code, where preliminary objections have been filed, the condemnee main-

tains her possessory interest during their pendency. 26 P.S. §1-406. Since her preliminary objections are still pending, petitioner argues she maintains standing to challenge the tax sale by virtue of her possessory interest. We reject both arguments.

This action is before us in the guise of a petition to set aside a tax sale under the Tax Sale Law and, thus, petitioner's standing must be defined under its terms. See *Farro v. Tax Claim Bureau of Monroe County,* 704 A.2d 1137, 1141 (Pa. Commw. 1997), *appeal denied,* 555 Pa. 715, 724 A.2d 936 (1998). The Commonwealth Court has noted that in fashioning the Tax Sale Law, "the legislature clearly and without equivocation" has provided that only owners of real estate subject to a tax sale are required to be given all notices under the Tax Sale Law and that if an owner is missing from a suit, the court lacks jurisdiction. *Appeal of Yardley,* 166 Pa. Commw. 596, 602, 646 A.2d 751, 754 (1994). Because petitioner is attacking the tax sale's validity on the basis of lack of notice, she must be an "owner" under the Tax Sale Law or else she lacks standing. See *Plank v. Monroe County Tax Claim Bureau,* 735 A.2d 178, 181 (Pa. Commw. 1999). The Tax Sale Law defines "owner" as: "[1] the person in whose name the property is last registered, if registered according to law, or, if not registered according to law, [2] the person whose name last appears as an owner of record on any deed or instrument of conveyance recorded in the county office designated for recording and [3] in all other cases means any person in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, or the reputed owner or owners thereof, in the neighborhood of such property; . . . ." 72 P.S. §5860.102.

The first clause defining an owner as "the person in whose name the property is last registered" does not apply here. "The term 'registered' refers to the process of establishing and maintaining a current record of all real estate transactions in the office of the county commissioners so that the current ownership can be ascertained without burdensome and time-consuming searches." *Farro* at 1140. (citation omitted) Only counties of the first and second class are required under the law to maintain such offices; Dauphin County is a county of the third class.

The second clause defines "owner" as "the person whose name last appears as an owner of record on any deed or instrument [of conveyance] recorded in the county office designated for recording." *Id.* at 1141. The evidence established that at the time of the tax sale, petitioner and her late mother were the last recorded owners by deed. The deed conveying the property to petitioner and her mother was recorded December 28, 1972, and indexed in the recorder of deeds office.

However, under the Tax Sale Law, ownership can also be conferred by other "instruments of conveyance." While we found no applicable appellate law, a declaration of taking filed in a condemnation proceeding could be such an instrument because it acts to convey title. Furthermore, the notice thereof must be recorded in the recorder of deeds office and the recording must be indexed to indicate the condemnee as grantor and the condemnor as grantee. 26 P.S. §§1-402(a), 1-404. Thus, if the notice of declaration of taking was properly recorded, it would be the most recent instrument of conveyance and the authority would qualify as the parking lot "owner" under the Tax Sale Law. However, we find the declaration was not properly recorded.

We necessarily infer into the tax sale "owner" definition that the instrument of conveyance—here, the declaration of taking—be properly recorded. The primary object of recording is to give public notice in whom title resides so that no one may be defrauded by deceptious appearance of title. *Mancine v. Concord-Liberty Savings & Loan Association,* 229 Pa. Super. 260, 445 A.2d 744 (1982). Here, while the authority's "Notice of filing of declaration of taking" was recorded February 3, 1999 in the recorder of deeds office at deed book 3323, page 127, it was not, according to respondent Bianchi, indexed. (Answer to petition to set aside, ¶17.) We deem this factual averment admitted for the purpose of this proceeding.[4]

The recorder of deeds office is under a duty, pursuant to Eminent Domain Code section 404, as well as under all relevant recording laws, to record *and* index instruments of conveyance (and other relevant documents affecting real property interests). See 21 P.S. §351; 16 P.S. §§9851, 9852. See generally, 16 P.S. §§9751-9757; 21 P.S. §§381-410. A recorded instrument, which is not in-

---

4. In so finding, we are merely acknowledging that respondent's verified answer is deemed admitted under petition and answer practice, as follows:

"(c) If an answer is filed raising disputed issues of material fact, the petitioner may take depositions on those issues, or such other discovery as the court allows, within the time set forth in the order of the court. If the petitioner does not do so, the petition shall be decided on petition and answer and all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted for the purpose of this subdivision." Pa.R.C.P. 206.7(c).

We need not find whether the notice of declaration of taking was indeed not indexed, that the authority had any responsibility in causing the purported non-indexing nor ultimately whether respondent was a bona fide purchaser.

dexed, cannot be searched and is ineffective to provide public notice, which is the purpose of recording. *Mancine, supra.* See 16 P.S. §9853; *Mid-State Bank and Trust Co. v. Globalnet International Inc.,* 557 Pa. 554, 735 A.2d 79 (1999) (quoting *Lund v. Heinrich,* 410 Pa. 341, 346, 189 A.2d 581, 584 (1963)) ("[a] party is on constructive notice of another's interest in real property where the party 'could have learned by inquiry of the person in possession and of others who, they had reason to believe, knew of facts which might affect title, and also by what appeared in the appropriate indexes in the office of the recorder of deeds' ").

Furthermore, we note that in proceeding with an upset tax sale, the tax claim bureau was under a duty to provide notice "to each owner as defined by this Act." 72 P.S. §5860.602(e)(1). As defined, the tax claim bureau could only have concluded that petitioner was the "owner" because it could not have discovered the improperly recorded declaration of taking. The tax claim bureau cannot be charged with notice of recording failures occurring in the recorder of deeds office. *Brown v. Barnes Real Estate Co.,* 44 Pa. Commw. 439, 443-44, 404 A.2d 437, 439 (1979). Thus, petitioner was the "owner" and entitled to all notices required under the Tax Sale Law.

Respondent erroneously argues petitioner lacked standing because, following the authority's declaration of taking, she was divested of title. As set forth above, however, ownership is not determined by who owns legal title but by who is the statutory owner under the Tax Sale Law. This concept was addressed in *Farro, supra.* There, the Farros' property was sold for delinquent taxes at a 1991 tax sale to a purchaser who promptly recorded the deed. However, that tax sale was later set aside by

order of court because the Farros had not received proper notice. In 1994, the property was again subject to a tax sale and sold, through a straw purchase, to the original purchaser. The Farros again sought to set aside the sale for lack of notice, since the county tax claim bureau had sent all bills and notices to the purchaser, based on his recorded deed from the first tax sale. The Farros claimed they maintained title to their property, including full ownership interest and rights therein, as a result of the court's order setting aside the 1991 tax sale, and, thus, were due to receive proper notice under the Tax Sale Law. The court rejected the argument as follows:

"This contention, however, dramatizes the difference between two concepts of ownership, the feudal concept of ownership derived from seisin and the later concept of ownership derived from official recordation, and ignores the concept of ownership as defined in the Act. Nevertheless, the fact remains that [the purchaser] was the last owner of record because he properly recorded his ownership interest in the subject property when he acquired the property at the first tax sale. The Act expressly states, as does this court's opinion in *Grace,* that the latest owner of record prior to the tax sale is the owner for purposes of the Act and, therefore, for purposes of receiving notice under section 602, 72 P.S. §5860.602. *Id.* Under the plain meaning of the relevant statutory provisions, the Farros were not the record owners under the Act and, therefore, they were not entitled to notice of the second tax sale." *Id.* at 1141 (citing *Grace Building Co. Inc. v. Lanigan,* 15 Pa. Commw. 643, 328 A.2d 919 (1974)).

Thus, while the authority acquired legal title under the Eminent Domain Code pursuant to the declaration of

taking, under the Real Estate Tax Law, petitioner nevertheless qualified as the statutory "owner."

## Tax Sale Notice

As an "owner" under the Tax Sale Law, petitioner was entitled to proper notice of the impending tax sale as required under section 602. 72 P.S. §5860.602. Section 602 sets forth three methods of notice: publication at least 30 days prior to sale, notification by certified/first-class mail and posting of the property at least 10 days prior to the sale. *Ban v. Tax Claim Bureau of Washington County,* 698 A.2d 1386, 1388 (Pa. Commw. 1997). The burden of proving compliance with statutory notice provisions rests with the tax claim bureau. *Id.* These notice provisions are to be strictly construed, and strict compliance with them is necessary to guard against deprivation of property without due process. *Id.* If any one is defective, the sale is void. *Id.* Petitioner claims both the posting and the mailed notice(s) were deficient.

## 1. Posting

The Tax Sale Law requires that "[e]ach property scheduled for sale shall be posted at least 10 days prior to the sale." 72 P.S. §5860.602(e)(3). Petitioner claims the sheriff wrongly posted an adjacent property. The deputy sheriff who posted the notice filed an affidavit that he posted the property at 138 Cranberry Street on September 2, 1999. Respondent Bianchi notes there is a presumption of regularity of the acts of public officers and therefore the court must presume the tax claim bureau posted the property as attested in the affidavit. *Thomas v. Montgomery County Tax Claim Bureau,* 123 Pa. Commw. 371, 374, 553 A.2d 1044, 1046 (1989). However, the evidence presented re-

butted this presumption and established that the tax claim bureau indeed posted the wrong property and, thus, the tax sale must be set aside.

This evidence included testimony from Sherman Lett, an employee of Harris Savings Bank, who regularly parked in the 138 Cranberry Street lot. He testified that he never observed any type of notice posted on the premises in August and September 1999. He did, however, observe a tax sale notice posted along a concrete curb located on an adjacent parking lot. Mr. Lett glanced at the notice but did not recall what property it referenced. He claimed that had he observed a notice for the lot where Harris Savings employees parked, he would have informed his employer.

William McCarthy, the general manager of nearby Pennsylvania Garages Inc., also testified that in August or September 1999, he observed a tax sale notice posted on the same concrete curb on property owned by Pennsylvania Garages. Mr. McCarthy testified the posting concerned him since he was responsible for managing the posted property. Accordingly, he read the posting and recalled that it referred to an owner "Latham." He testified the notice so piqued his interest that he surveyed all the other nearby lots for posted notices, including the lot at issue here, but observed none.

Unquestionably, the posting of the Pennsylvania Garages property observed by Lett and McCarthy, naming Latham, was the one which the tax claim bureau claimed it had posted on Latham's property. As such, the sale must be invalidated. *In re Upset Price Tax Sale,* 150 Pa. Commw. 191, 194, 615 A.2d 870, 872 (1992).

## 2. Mail Notification

We alternatively find that the tax claim bureau failed to meet its obligation under the mailing requirement. The

tax claim bureau was required, at least 30 days before the sale date, to send the owner notification by certified mail, return receipt requested. 72 P.S. §5860.602(e)(1). The tax claim bureau arguably complied by mailing the required notice August 23, 1999. However, since the first tax sale notice was returned indicating there was "no such number" for 138 Cranberry Street, the tax claim bureau was required to comply with additional statutory notice requirements.

First, under section 602(e)(2), because petitioner failed to acknowledge the first notice, the tax claim bureau was required to mail her a second notice first-class mail, proof of mailing, at least 10 days prior to the sale, to her last known post office address based on information it knew from its own records, from the tax collector(s) of the districts in which taxes were delinquent and from county assessment office records. 72 P.S. §5860.602(e)(2).

Second, the county tax claim bureau was required to undertake reasonable "additional notification efforts" to discover petitioner's whereabouts under section 5860.607a which states as follows:

"(a) When any notification of a pending tax sale is required to be mailed to any owner, . . ., and such mailed notification is . . . returned without the required receipted personal signature of the addressee . . ., then before the tax sale can be conducted or confirmed, the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him. The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternative address or telephone number which may have been

written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided by the Act." 72 P.S. §5860.607a(a).

The tax claim bureau failed to undertake reasonable additional notification efforts. The testimony established that the tax claim bureau merely researched the Harrisburg area phone book, the Harrisburg city directory and city computer tax records. Section 607a(a) *requires* that the tax claim bureau's efforts include, at the least, "a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternative address or telephone number which may have been written on or in the file pertinent to such property." 72 P.S. §5860.607a(a). The tax claim bureau failed to meet its burden of proving compliance with these requirements[5] and, thus, the sale must be set aside.

Accordingly, we enter the following:

## ORDER

And now, February 18, 2000, the petition of Patricia Latham to set aside the September 24, 1999 upset tax sale of property located at 138 Cranberry Street, Harrisburg, PA (tax parcel no. 4-30-15), is hereby granted.

---

5. Clearly, petitioner's Florida address was ascertainable since the authority served her without any difficulty.