IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Sharon George, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 221 C.D. 2023 |
| | : | |
| Delaware County Tax Claim Bureau | : | Submitted: July 5, 2024 |
| and Tobin Bros. LTD | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE ANNE E. COVEY, Judge
                    HONORABLE LORI A. DUMAS, Judge

OPINION
BY JUDGE McCULLOUGH                                        FILED: August 21, 2024

Sharon George (George) appeals from the February 8, 2023 order entered by the Court of Common Pleas of Delaware County (trial court) denying her Petition to Set Aside Tax Sale (Petition to Set Aside) of the premises located at 710 McIlvain Street, Delaware County, Pennsylvania (Property). Upon review, we reverse.

## I.   Facts and Procedural History

George acquired title to the Property in 2014. Both the Deed and the filed Property Registration Form listed George's address to mail tax bills as 251 E. 91st Street, Brooklyn, New York 11212. Since the time she obtained title to the Property, George's address changed multiple times. About "three years ago," she moved to 1284 East 84th Street, Brooklyn, New York 11236, where she lived until she moved to her current address of 8909 Avenue L, in Brooklyn, "one a year ago." (Reproduced Record

(R.R.) at 75-77.)[1]  It is undisputed that George did not provide her new address to the Delaware County Tax Claim Bureau (Bureau).

Chester City and Delaware County real estate taxes for the Property became delinquent and were not paid for the years 2019 and 2020, totaling $980.02. As a result of the delinquency, the Bureau mailed George a Return of Claim, the Tax Sale Notice, and the Final Notice of Tax Sale *via* certified mail, return receipt requested, on three occasions in the years 2020 and 2021 to "George Sharon" at George's address on file, 251 E. 91st Street, Brooklyn, New York 11212. *Id.* at 82-84. The United States Postal Service (USPS) returned all the notices to the Bureau with an indication "Return to Sender.  Unable to Forward." *Id.*  The Bureau also advertised Notice of Upset Tax Sale for the Property in the Chester Spirit on August 11, 2021, The Philadelphia Inquirer on August 12, 2021, and the Delaware County Legal Journal on August 13, 2021. *Id.* at 90.[2]

The Property proceeded to the upset tax sale on September 16, 2021, at which time Tobin Brothers, LTD (Tobin), as the highest bidder, purchased the Property.  On September 24, 2021, a Notice of Sale was sent by the Bureau to George at the 251 E. 91st Street, Brooklyn, New York 11212 address on file.  *Id.* at 91. Approximately one year later, in July 2022, George learned of the sale of the Property when she went to the Property to do some work on it and noticed that the locks were changed. *Id.* at 72-73.  On September 22, 2022, George filed the Petition to Set Aside. A hearing on the Petition to Set Aside was held on January 31, 2023.

---

[1] George failed to number the pages of the Reproduced Record as required by Pa.R.A.P. 2173. For ease of citation, the Court has referenced the numbering generated by electronic pagination, starting with the cover page as page one.

[2] Although the transcript is part of the Reproduced Record, none of the exhibits introduced during the hearing are included.

Janine Heinlien, the Upset Sale Coordinator for Delaware County, testified that upon receiving the returned notices, she checked "the mailing address with the Board of Assessment and Recorder of Deeds to make sure [she] did have the correct proper mailing address." *Id.* at 85. She further testified that she also "reached out to the Chester City tax collector and asked her to provide a different mailing address if there was such," and she was "informed that no change of address had ever been filed regarding this [P]roperty." *Id.* at 86, 92. She admitted that she never contacted the post office in New York to verify George's new address. *Id.* at 93. She never checked to see if the Property had previously been listed for upset tax sale. *Id.* at 92.

On February 8, 2023, the trial court issued an order denying the Petition to Set Aside. The trial court found that George never updated her address with the Bureau. It found that the Bureau complied with the Real Estate Tax Sale Law's (RETSL)[3] certified mailing requirements, and that when the notices were returned undelivered, it posted notice on the Property and then "took reasonable further steps to notify the owner including publication in local media, as required by the controlling statute." (Trial ct. op., 2/8/23 at 3-4, Findings of Fact (FOF) 24, 25.) It noted that Ms. Heinlien testified that she performed a search with the Chester City tax collector and the County Assessor's Office for a change of address for George and found none. *Id.* at 2, FOF 9. It concluded that

> [n]othing further is needed on the part of [the] Bureau to satisfy the requirements of the RETSL. [The Bureau] is not required to leave no stone unturned in hunting down [George], who by her own admission moved twice and never notified the [] Bureau of her proper address. To expect it to do so would be to abandon the goal of an efficient governmental system that protects citizens' interests.

---

[3] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101 - 5860.803.

*Id.* at 4, FOF 29.

On February 10, 2023, George filed a Motion for Reconsideration, arguing that the Bureau failed to meet its burden of establishing under Section 607.1 of the RETSL, 72 P.S. § 5860.607a(a),[4] that it took reasonable steps to locate her. The trial court denied the Motion for Reconsideration on February 27, 2023. This appeal followed.

On appeal, George raises three arguments. She contends that the trial court abused its discretion by concluding that the Bureau established its compliance with the reasonable additional notification efforts under Section 607.1. She also contends that the trial court improperly used the notice requirements of Section 602 of the RETSL, 72 P.S. § 5860.602, *i.e.*, publication in local media, to find that the Bureau took reasonable "further steps" to locate her under Section 607.1, and it improperly focused on her neglect instead of focusing on whether the Bureau gave proper statutory notice.

## II. Analysis

Our review in tax sale cases is limited to determining whether the trial court abused its discretion or erred as a matter of law. *See Rice v. Compro Distributing., Inc.*, 901 A.2d 570, 574 (Pa. Cmwlth. 2006). In considering whether a trial court abused its discretion, this Court looks to whether the trial court engaged in "a manifestly unreasonable exercise in judgment[ ] or [rendered] a final result that evidences partiality, prejudice, bias, or ill-will." *Allegheny County v. Golf Resort, Inc.*, 974 A.2d 1242, 1245 (Pa. Cmwlth. 2009) (citation omitted).

"A presumption of regularity attaches to tax sale cases. However, once [challenged], the burden shifts to the tax claim bureau to show that proper notice was

_____
[4] Added by the Act of July 3, 1986, P.L. 351.

4

given." *Gutierrez v. Washington County Tax Claim Bureau*, 260 A.3d 291, 295 (Pa. Cmwlth. 2021) (citation omitted). "It is well settled that the notice provisions of the [RETSL] are to be strictly construed and that strict compliance with the notice provisions is essential to prevent the deprivation of property without due process." *In re Tax Sale of Real Property Situated in Jefferson Township*, 828 A.2d 475, 479 (Pa. Cmwlth. 2003) (citing *Murphy v. Monroe County Tax Claim Bureau*, 784 A.2d 878 (Pa. Cmwlth. 2001)). The purpose of a tax sale is not to strip an owner of his property but rather to ensure that the tax on the property is collected. *Murphy*, 784 A.2d at 883. At a minimum, due process requires that if reasonably possible, a government must notify an owner before his property is sold at an upset tax sale. *Id.* "A failure by a tax claim bureau to comply with all the statutory notice requirements ordinarily nullifies a sale." *Cruder v. Westmoreland County Tax Claim Bureau*, 861 A.2d 411, 415 (Pa. Cmwlth. 2004).

### A. Publication is a Mandatory Form of Notice Under Section 602 - not an Additional Means to Locate a Taxpayer Under Section 607.1

George argues that the trial court mistakenly concluded that the Bureau met its burden **under Section 607.1(a)** of showing that it made reasonable "additional" notification efforts to discover her whereabouts because it published notice of the sale in local media. *See* Trial ct. op. at 3-4; FOF 24, 25 (ruling that the Bureau "took reasonable **further** steps to notify the owner including publication in local media, as required by the controlling statute") (emphasis added). We agree this was error.

Under Section 602(a) of the RETSL, a tax claim bureau is obligated to provide three methods of notice, including (1) published notice, (2) mailed notice, and (3) posted notice. 72 P.S. § 5860.602(a). Publication of notice of the tax sale in local media is thus one of the three mandatory forms of notice to property owner prior to an

5

upset tax sale (publication, posting, and mail).  Under Section 602(a) of the RETSL, 72 P.S. § 5860.602(a), the tax claim bureau **must** publish the upset tax sale with a list of the properties to be sold once in not less than two newspapers of general circulation in the county and once in the legal journal for the county.  Publication is a statutorily mandated condition precedent to a valid tax sale.  *In re Sale of Tax Delinquent Property on October 19, 2020*, 308 A.3d 890 (Pa. Cmwlth. 2024).  The requisites of published notice are intended to provide information to the public in general.  *In re Adams County Tax Claim Bureau*, 200 A.3d 622, 626 (Pa. Cmwlth. 2018).

A tax claim bureau's obligations under Section 607.1 are qualified, and they are **in addition to** its obligations under Section 602.  Specifically, where, as here, the mailed notices are returned without the necessary signatures or not acknowledged at all, the additional notification requirements of Section 607.1(a), 72 P.S. § 5860.607a(a), require the tax claim bureau to exercise reasonable efforts to ascertain the whereabouts of the owner before the tax sale is conducted.  Section 607.1(a) of the RETSL specifically provides:

> When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner . . .  and such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or is not returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, **the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him**. **The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office**, as well as contacts made to any

6

apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

72 P.S. § 5860.607a(a) (emphasis added).

Section 607.1 says nothing about publication. This is because the publication requirement is specifically dealt with in the notice provisions of Section 602(a) of the RETSL. The trial court's conclusion that publication was over and above that which was statutorily required under Section 602 was wrong and precipitated its erroneous conclusion that the Bureau met its additional notification obligations under Section 607.1 by publishing notice of the sale.

## B. Reasonable Efforts to Discover George's Whereabouts

Next, George contends that because the mailed notices were returned as undeliverable, the Bureau had a duty to make additional reasonable efforts to discover her whereabouts under Section 607.1 of the RETSL, 72 P.S. § 5860.607a(a). Again, we must agree with George.

When a tax claim bureau does not effectuate notice of the sale by certified mail, Section 607.1 of the RETSL mandates additional notification efforts. The purpose of "reasonable efforts" is to effectuate notice on an owner. Section 607.1(a)'s use of the mandatory terms "must" and "shall" reveal that a tax claim bureau is obligated to undertake certain specific efforts to discover the whereabouts of any "person or entity whose property interests are likely to be significantly affected by [the] tax sale" every time the tax claim bureau's certified mailing is "returned without the required personal signature of the addressee." 72 P.S. § 5860.607a(a). A tax claim

7

bureau is required under the clear language of Section 607.1 to, at the very least, search current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office, and the prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. In *Rice*, we described these efforts as "the mandatory minimum search required by Section 607.1 of the [RETSL]." 901 A.2d at 573. When conducting additional notification efforts under this section, a tax claim bureau must use "ordinary common sense business practices" to ascertain proper addresses where notice of the tax sale may be given. *Farro v. Tax Claim Bureau of Monroe County*, 704 A.2d 1137, 1142 (Pa. Cmwlth. 1997).

This Court has repeatedly set aside tax sales where all the specific searches listed in Section 607.1 of the RETSL were not performed. In *Steinbacher v. Northumberland County Tax Claim Bureau*, 996 A.2d 1095 (Pa. Cmwlth. 2010), one property owner received all the tax sale notices, but her husband, from whom she was separated, did not. When the notice of the tax sale was returned as undeliverable, the tax claim bureau did not search current telephone directories for the county or the dockets of the county tax assessment offices, recorder of deeds, or prothonotary's office, as mandated by Section 607.1. *Id.* at 1099. The tax bureau's witness testified that she only looked in one local directory and admitted that she undertook no further efforts to discover the property owner's address. *Id.* This Court set aside the tax sale because the tax claim bureau failed to satisfy the specific minimum requirements set forth in Section 607.1. We reversed the trial court's decision to excuse the tax claim bureau from these searches even though the searches would have been futile, inasmuch as the missing owner did not reside in the county. We held that "strict compliance with the [RETSL's] notice provisions is essential to prevent the deprivation of property

8

without due process." *Id. See also In re Upset Tax Sale of September 29, 2014*, 163 A.3d 1072, 1078 (Pa. Cmwlth. 2017) (reversing the trial court and setting aside the tax sale where the tax claim bureau was required under Section 607.1, at a minimum, to do "a search of current telephone directories for the county," and this was not done).

Here, the Bureau failed to conduct the statutorily required searches. The Bureau **only** checked with the County Assessor's Office, Recorder of Deeds, and the Chester City tax collector to determine if a change of address was on file. The Bureau admittedly did not search "**current telephone directories for the county**" or "**the dockets and indices of the . . . prothonotary's office,**"[5] as specifically required under Section 607.1. 72 P.S. § 5860.607a(a). For that reason alone, the Bureau did not establish that it made "reasonable efforts" under Section 607.1 to discover George's whereabouts and notify her of the impending tax sale. *In re Upset Tax Sale of September 29, 2014*.

Aside from failing to conduct the searches in accordance with Section 607.1, the Bureau also failed to establish that it used any other "ordinary common sense business practices" to attempt to locate George. *Farro*, 704 A.2d 1142. We have recognized a number of other means to identify the whereabouts of a property owner in many cases over the years. For example, in *In re Tax Claim Bureau's Sales of Real Estate for Unpaid Taxes Levied for Year 2018* (Pa. Cmwlth., No. 598 C.D. 2021, filed February 22, 2023),[6] we concluded that the tax claim bureau did not make reasonable efforts to locate the owner's whereabouts where the tax claim bureau had access to the

---

[5] In Delaware County, the Office of Judicial Support performs the functions of the former Clerk of Courts and Prothonotary. There was no evidence presented that the Bureau consulted with the Office of Judicial Support to see if there was an updated address for George.

[6] This unreported decision is cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

9

deed, which included the contact information for the grantor's counsel and the name of the notary public who acknowledged the executor's signature. In setting aside the tax sale, we explained that the tax claim bureau could have easily reached out to the law firm or the notary public to attempt to identify the owner or ascertain an alternate address to ensure the owner received notice.

In *Williams v. County of Monroe* (Pa. Cmwlth., No. 666 C.D. 2022, filed August 29, 2023), we held that reasonable additional notification efforts would have included simply telephoning the post office in question to ask the meaning of the notation "Covid 19 RT 41" in the "received by" space on the certified mail receipt.

In *Willis v. Schuylkill County Tax Claim Bureau* (Pa. Cmwlth., No. 229 C.D. 2023, filed January 18, 2024), the notices sent by certified mail were returned by the USPS unclaimed with the notation "COVID-19." The tax claim bureau did not make any additional notification efforts, but instead relied on the address contained in the tax bureau's records. Reversing the trial court and setting aside the tax sale, we noted that the tax claim bureau could have satisfied its burden under Section 607.1(a) by simply looking in the telephone directory or searching the dockets of other county offices and making note of its efforts in the property's file. *See also Maya v. County of Erie Tax Claim Bureau*, 59 A.3d 50, 57 (Pa. Cmwlth. 2013) (noting that while the legislature has identified several methods of locating taxpayers, it did not foreclose other searches, such as an internet search); *Rice*, 901 A.2d at 577 (affirming trial court's determination that tax claim bureau did not exercise reasonable efforts to ascertain the whereabouts of the property owner where the tax claim bureau did not make an inquiry of the postal authority or tax collector); *Tax Sale of Real Property Situated in Jefferson Township*, 828 A.2d at 480 (suggesting, although not requiring, an internet search for an alternative address).

Here, not only did the Bureau fail to establish that it strictly complied with mandatory minimum efforts outlined in Section 607.1, but it also presented no evidence that it made any other efforts whatsoever to investigate George's whereabouts. Because the Bureau did not use ordinary common sense business practices to attempt actual notice to George, it failed to satisfy its duties under Section 607.1 of RETSL.

### C. Taxpayer's Neglect

Finally, it is clear from the trial court's order that it strongly considered George's failure to notify the Bureau of her change of address and highlighted it as one of the bases for its decision. This was also in error.

In reviewing the validity of a tax sale, the court must focus "not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the [tax claim bureau] comply with the requirements of the [RETSL]." *In re Consolidated Reports and Return by Tax Claims Bureau of Northumberland County of Properties*, 132 A.3d 637, 644 (Pa. Cmwlth. 2016) (quoting *Smith v. Tax Claim Bureau of Pike County*, 834 A.2d 1247, 1251 (Pa. Cmwlth. 2003)). It is the conduct of the tax claim bureau that is determinative of compliance with the statutory notice provisions. *Steinbacher*, 996 A.2d at 1099. Moreover, a property owner does not possess a legal duty to provide a tax claim bureau with a change of address. *See Smith*, 834 A.2d at 1251; *In re Adams County Tax Claim Bureau*, 200 A.3d 622, 627 (Pa. Cmwlth. 2018). George's failure to inform the Bureau of her change of address was of no moment. The trial court thus erred in holding the burden lay with George to provide an alternate address to ensure proper notice of the sale.

### III. Conclusion

Accordingly, for the foregoing reasons, the trial court's order denying George's Petition to Set Aside is reversed.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sharon George,                      :
           Appellant        :
                              :
       v.                   :   No.  221 C.D. 2023
                              :
Delaware County Tax Claim Bureau   :
and Tobin Bros. LTD              :

## ***ORDER***

AND NOW, this 21st day of  August, 2024, the February 8, 2023 order of the Court of Common Pleas of Delaware County is hereby REVERSED.

_____
PATRICIA A. McCULLOUGH, Judge