# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Hempfield 115 Trust, | : | |
| Jan Ondra Trustee, | : | |
| Appellants | : | |
| | : | No. 989 C.D. 2022 |
| v. | : | |
| | : | Submitted: March 4, 2025 |
| Westmoreland County Tax Claim | : | |
| Bureau, et al. | : | |

BEFORE:   HONORABLE ANNE E. COVEY, Judge
          HONORABLE LORI A. DUMAS, Judge
          HONORABLE MATTHEW S. WOLF, Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                   **FILED:  June 20, 2025**

Appellant Hempfield 115 Trust, Jan Ondra Trustee (Appellant), appeals from the order entered by the Court of Common Pleas of Westmoreland County (Common Pleas) on August 16, 2022.  Through that order, Common Pleas denied Appellant's petition for rule to show cause to set aside tax sale (Petition) regarding a property located at 2607 Cromwell Street in Grapeville, Pennsylvania (Property).  We affirm.

## I. BACKGROUND[1]

The relevant facts are as follows.  On December 17, 2012, a deed was recorded with the Westmoreland County Recorder's Office that named Hempfield

---

[1] We draw this background from the opinion Common Pleas issued in conjuction with the order denying the Petition, as well as the transcript of the hearing Common Pleas held regarding the Petition.  *See generally* Common Pleas' Op., 8/16/22; Common Pleas Hr'g Tr., 5/19/22.

115 Trust as the owner of the Property and, in addition, identified an individual named Will Sanders as Hempfield 115 Trust's trustee. On April 3, 2018, Appellee Westmoreland County Tax Claim Bureau (Bureau) mailed a "notice of return and claim" via certified mail to Sanders at his registered address. This notice, which was sent for the purpose of notifying Hempfield 115 Trust that the Property could be listed at an upset sale in 2019, was subsequently returned to the Bureau as undeliverable. The Bureau then sent a notice of public sale to Sanders at the same address on May 7, 2019, via certified mail, which was also returned to the Bureau as undeliverable, followed by a second notice of public sale via first-class mail on August 14, 2019.

In addition, Ludwig Sharek, a sheriff's deputy, posted a copy of the public sale notice at the Property on August 23, 2019, but did not attempt to personally serve Sanders there because the deputy believed he lived elsewhere. The impending sale was also advertised through a notice placed in the Westmoreland County Law Review on July 25, 2019, and in the Pittsburgh Tribune-Review on August 7, 2019. The Bureau made no additional attempts to locate or notify Sanders or Hempfield 115 Trust and then sold the Property to New Day Coalition, Inc. (New Day) via upset sale on September 9, 2019.

On October 15, 2019, Appellant filed its Petition, after which Common Pleas held an evidentiary hearing on May 19, 2022. During the course of that hearing, both Sharek and Linda Kuchar, the Bureau's Deputy Director, testified regarding the Bureau's aforementioned efforts to post the Property and to provide Hempfield 115 Trust with notice through Sanders.[2]

---

[2] Sanders was not present at the hearing due to a purported illness.

2

As for Jan Ondra, he appeared and stated that he had become the Property's trustee in Sanders' stead after Hempfield 115 Trust had purchased it in 2012; Ondra did not specify exactly when this change had occurred, or provide any documentation substantiating his assertion, and admitted that his assumption of those trustee duties had not been memorialized through a new deed. In addition, Ondra maintained that he only learned that the Property had been sold to New Day in November or December 2019, when his tenant refused to pay her monthly rent and informed him that she was doing so because Hempfield 115 Trust no longer owned the Property.

That tenant, Sherri Ann French, also appeared at the hearing and testified that she found the posted notice of public sale on the Property's premises in August 2019, immediately called to tell Ondra about the notice, and then mailed the notice to Ondra at his direction. French also stated that a second notice had been posted on the Property at some point between the first notice's posting and the upset sale, as well as that she had promptly called Ondra to tell him about the second notice. French presented this second notice during her testimony. Ondra then denied that French had ever informed him about either of the posted notices or that he had received the first notice from French at any point in time.

Thereafter, on August 16, 2022, Common Pleas denied the Petition on the basis that Hempfield 115 Trust, through Ondra and French, had received actual notice of the upset sale prior to its occurrence.

This appeal then followed shortly thereafter.

## II. DISCUSSION

Appellant's arguments can be distilled into a single contention: Common Pleas abused its discretion and committed errors of law by determining

3

that Appellant had received actual notice regarding the impending upset sale and, thus, that the Bureau had been consequently relieved of the responsibility to provide Appellant with statutorily compliant notice.[3]  Appellant's Br. at 9-13.

We disagree.  Per Section 602 of the Real Estate Tax Sale Law (RETSL),[4] the relevant tax claim bureau must provide notice of an upset sale in three ways.  First, the notice must be published, at least once and no less than 30 days prior to the sale, in two newspapers of general circulation in the pertinent county, as well in as the legal journal that publishes legal notices in the area; second, the notice must be sent via "certified mail, restricted delivery, return receipt requested, postage prepaid," to each owner of the affected property at least 30 days before the sale; finally, the notice must be physically posted on the property no less than 10 days prior to the sale.  72 P.S. § 5860.602(a), (e)-(e)(1), (e)(3).

Furthermore, in the event that any of the return receipts are not ultimately received from each owner, Section 602 mandates that the tax claim bureau must send a substantially similar notice to each affected property owner at their last known address via first-class mail, with proof of mailing.  *Id.* § 5860.602(e)(2).  In that scenario, the tax claim bureau must "exercise reasonable efforts to discover the

---

[3]     In tax sale cases, our review is limited to determining whether the trial court abused its discretion, erred as a matter of law, or rendered a decision not supported by substantial evidence.  The trial court has the exclusive province to weigh evidence, make credibility determinations, and to draw reasonable inferences from the evidence presented.  Where the trial court's findings are supported by substantial evidence of record, this Court may not disturb those findings on appeal.

*Weaver v. Schuylkill Cnty. Tax Claim Bureau*, 324 A.3d 711, 716 n.4 (Pa. Cmwlth. 2024).  "Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Eureka Stone Quarry, Inc. v. Dep't of Env't Prot.*, 957 A.2d 337, 344 (Pa. Cmwlth. 2008) (cleaned up).

[4] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. § 5860.602.

whereabouts of such person or entity and notify him." 72 P.S. § 5860.607a(a).[5] Where challenged, the tax claim bureau has the burden of proving that it strictly complied with these notice requirements. *Farro v. Tax Claim Bureau of Monroe Cnty.*, 704 A.2d 1137, 1142 (Pa. Cmwlth. 1997).

Nevertheless, there is an important exception to these statutory duties. Specifically, "[t]he formal requirements of Section 602 [regarding mailed notice] need not be met when a taxpayer has actual notice of a tax delinquency and scheduled sale. . . . Actual notice encompasses both express actual notice and implied actual notice." *Wells Fargo Bank of Minn., NA v. Tax Claim Bureau of Monroe Cnty.*, 817 A.2d 1196, 1200 (Pa. Cmwlth. 2003) (citations omitted). In other words, "actual notice is such notice as is positively proved to have been given to a party directly and personally, or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry." *Sabbeth v. Tax Claim Bureau of Fulton Cnty.*, 714 A.2d 514, 517 (Pa. Cmwlth. 1998) (quoting BLACK'S LAW DICTIONARY 1061-62 (6th ed. 1990)). "Whether a taxpayer has actual notice of an upset tax sale of his or her property is a question of fact that will not be disturbed on appeal if supported by substantial evidence." *In re Consol. Reps. & Return by Tax Claims Bureau of Northumberland Cnty. of Props.*, 132 A.3d 637, 647 (Pa. Cmwlth. 2016) (*Consol. Reps. & Return*).

In this instance, the Bureau failed to prove that it strictly complied with RETSL's notice requirements. We recognize that there is no formal proof that Ondra is actually the Property's trustee, something which could theoretically relieve the Bureau of any responsibility to provide Appellant with RETSL-compliant notice through service upon Ondra. Even so, we cannot ignore the fact that the Bureau

---

[5] Section 607.1(a) of RETSL, added by the Act of July 3, 1986, P.L. 351.

made no effort, let alone a reasonable one, to ascertain a proper address for service upon Hempfield 115 Trust after multiple notices that had been sent to Sanders were returned to the Bureau as undeliverable. The Bureau therefore did not provide Appellant with statutorily adequate notice of the sale. *See Farro*, 704 A.2d at 1142; Section 602 of RETSL, 72 P.S. § 5860.602.

This noncompliance is ultimately of no moment, however, due to Common Pleas' determination that Appellant received timely actual notice in advance of the sale.[6] In support, Common Pleas found Sharek to be a credible witness and gave full weight to his testimony regarding posting the Property on August 23, 2019. Common Pleas Op., 8/16/22, at 11. In addition, Common Pleas credited French's testimony that she contemporaneously discovered that posted notice, immediately called Ondra to tell him about it, and then mailed the notice to Ondra at his behest. *Id.* We therefore conclude that Common Pleas did not abuse its discretion through its determination that Hempfield 115 Trust, through Ondra, received actual notice in advance of the upset sale for the Property, because that determination is supported by substantial evidence. *See Consol. Reps. & Return*, 132 A.3d at 647.[7]

---

[6] Though, again, there is no formal proof that Ondra is Hempfield 115 Trust's trustee, the record does reflect that Sanders was aware of Ondra's assertion to that effect but did not challenge it. *See* Common Pleas Hr'g, 5/19/22, at 4 (Appellant's attorney stating that Sanders had been present at all previous court proceedings involving the Petition). Furthermore, while Sanders was unable to appear at the hearing due to a medical emergency, the parties did agree to stipulate that Sanders would have testified that he had consented to Ondra's assumption of trustee duties for the Property. *See id.* at 52-55.

[7] It bears mentioning that actual notice does not relieve a tax claim bureau of its obligation to comply with RETSL's notice publication requirements. As we have stated in the past, "because the requisites of published notice are intended to provide information to the public in general, . . . actual notice to the property owner does not cure defective published notice." *In re Sale of Tax Delinq. Prop. on Oct. 19, 2020*, 308 A.3d 890, 899 n.14 (Pa. Cmwlth. 2024) (cleaned up); *cf.*

6

The dissent would chart a different course and would reverse Common Pleas because, in the dissent's view, actual notice of sale was insufficient to cure the Bureau's noncompliance. Specifically, the dissent argues that we must reverse because, per Section 607.1(a) of RETSL, the Bureau was required to undertake additional reasonable efforts to locate Sanders after the aforementioned notices were returned as undeliverable, but failed to do so. *Hempfield 115 Trust v. Westmoreland Cnty. Tax Bureau* (Pa. Cmwlth., No. 989 C.D. 2022, filed June 20, 2025), slip op. at 1-8 (Covey, J., dissenting).

Respectfully, this argument is misplaced. While Section 602 of RETSL mandates that a tax claim bureau must provide advance notice of sale via mailing, posting, and publication, our extant case law makes clear that a bureau is relieved of its responsibility to provide RETSL-compliant notice via mail in the event an affected property owner or interest holder received actual notice in advance of the sale. *See Consol. Reps. & Return*, 132 A.3d at 647; *Sabbeth*, 714 A.2d at 517; *Wells Fargo Bank of Minn.*, 817 A.2d at 1200. Section 607.1(a) does not impose any duties upon a bureau unless and until the bureau has unsuccessfully fulfilled its antecedent Section 602-based mailing duties. *See* 72 P.S. § 5860.607a(a). Thus, it stands to reason that actual notice not only cures any service defects for notices mailed

---

*Weaver*, 324 A.3d at 716 n.6 (quoting *Popple v. Luzerne Cnty. Tax Claim Bureau*, 960 A.2d 517, 522 (Pa. Cmwlth. 2008)) ("Typically, even when a taxpayer has actual notice of the tax sale, defective posting invalidates the tax sale because 'the posting of notice serves the function of notifying the general public, as well as the owner, of a tax sale.'"). However, we need not address whether the Bureau properly published notice regarding the September 9, 2019 upset sale, because Appellant has not raised that issue on appeal, and we are without authority to raise it *sua sponte*. *See* Appellant's Br. at 2, 8-18; Appellant's Pa.R.A.P. 1925(b) Statement, 10/11/22; *Beneficial Consumer Disc. Co. v. Vukman*, 77 A.3d 547, 553 (Pa. 2013); *City of Phila. v. Rivera*, 171 A.3d 1, 7-8 (Pa. Cmwlth. 2017); *City of Phila. v. Auguste*, 138 A.3d 697, 700 (Pa. Cmwlth. 2016).

7

pursuant to Section 602, but also relieves a bureau of any need to conduct additional reasonable efforts pursuant to Section 607.1(a).

Furthermore, the dissent's reasoning on this point completely disregards the credibility determinations made by Common Pleas regarding French's, Ondra's, and Sharek's testimony, and effectively seeks to discard a large chunk of the aforementioned existing case law that addresses actual notice in the context of RETSL. We decline to adopt such logic and, instead, reiterate our conclusion that Common Pleas' determination that Appellant received timely actual notice of the then-impending upset sale was both legally and factually sound. *See Consol. Reps. & Return*, 132 A.3d at 647; *Sabbeth*, 714 A.2d at 517; *Wells Fargo Bank of Minn.*, 817 A.2d at 1200.

### III. CONCLUSION

In accordance with the foregoing analysis, we affirm Common Pleas' August 16, 2022 order. *See Weaver*, 324 A.3d at 716 n.4.

_____
**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hempfield 115 Trust,                :
Jan Ondra Trustee,               :
          Appellants       :
                                 :    No. 989 C.D. 2022
          v.                   :
                                 :
Westmoreland County Tax Claim   :
Bureau, et al.                   :

## **O R D E R**

AND NOW, this 20th day of June, 2025, the order entered by the Court of Common Pleas of Westmoreland County on August 16, 2022, is AFFIRMED.

_____
**LORI A. DUMAS, Judge**

Hempfield 115 Trust,               :
Jan Ondra Trustee,               :
             Appellants       :
                      :
        v.                :
                      :
Westmoreland County Tax Claim   :   No. 989 C.D. 2022
Bureau, et al.                :   Submitted: March 4, 2025

BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COVEY                    FILED:  June 20, 2025

Respectfully, I disagree with the Majority's conclusion that although the Westmoreland County (County) Tax Claim Bureau (Bureau) did not provide Hempfield 115 Trust, Jan Ondra Trustee (Appellant) with the statutorily required notice of the upset sale, the noncompliance is of no moment due to the Westmoreland County Common Pleas Court's (Common Pleas) determination that Appellant received timely actual notice in advance of the sale. Because actual notice does not relieve the statutorily-created Bureau of its obligation to comply with the Real Estate Tax Sale Law's (RETSL)[1] notice requirements, I would reverse Common Pleas' order.

At all stages of this proceeding, including on appeal to this Court, Appellant raised the issue of whether the Bureau complied with the reasonable efforts requirement in Section 607.1(a) of the RETSL,[2] which mandates that when any

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-.803.

[2] *See* Petition to Set Aside Tax Sale ¶ 8; Reproduced Record at 26-28 (the Bureau Deputy Director's testimony); Statement of Errors Complained of on Appeal ¶ 2(b); Appellant Br. at 2, 8, 14-18. In the Reproduced Record, Appellant did not number the pages with a small "a" as required by

notification of a pending tax sale subject to court confirmation shall be mailed to any owner, and such mailed notification is either returned without the necessary addressee signed receipt or is not returned or acknowledged at all, then "**the [B]ureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him**" *before* the upset sale can be conducted or confirmed.  72 P.S. § 5860.607a(a) (emphasis added).  The Bureau's Deputy Director Linda Kuchar (Kuchar) testified that when the Bureau's certified mailing in the instant case was returned marked "return to sender, not deliverable as addressed and not able to forward[,]" *the Bureau did not do anything further*.  Reproduced Record (R.R.) at 26.  Specifically, she stated:

> Q. After the notice of annual sale is sent out and if it returns to the . . . Bureau, is there a second process to send out another notice of the sale by first-class mail?
>
> A. Unfortunately, no.  We receive thousands of envelopes returned, and with the staff that I have it's nearly impossible to do that with the number we receive.

R.R. at 28.  On cross-examination, Kuchar further related:

> Q. Does your file reflect that you received the unclaimed mail back and you became aware there was a bad address?  Does your file reflect anything that the . . . Bureau did in addition to locate the owner of the [P]roperty?[3]
>
> A. Not that I'm aware of.
>
> Q. There is no document that you can share with us that said after we got the notice back we did the additional things and go to the Assessment Office, go to the Prothonotary, go to

Pennsylvania Rule of Appellate Procedure 2173.  Pa.R.A.P. 2173 (providing "the pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures. . . . [T]hus 1, 2, 3, *etc.*, followed in the reproduced record by a small a, thus 1a, 2a, 3a, *etc.* . . . ").  For convenience, the page numbers referenced herein are consistent with the Reproduced Record.

Section 607.1(a) of the RETSL was added by Section 30 of the Act of July 3, 1986, P.L. 351.

[3] Property herein references the property located at 2607 Cromwell Street in Grapeville, Pennsylvania.

Voter Registration. You didn't do any of that; is that a fair statement?

A. Not that I'm aware of.

Q. You also didn't check telephone directories?

A. Not that I'm aware of.

R.R. at 33. Clearly, the Bureau did not comply with Section 607.1(a) of the RETSL's reasonable efforts requirement.

Indeed, the Majority concedes that "the Bureau failed to prove that it had strictly complied with [the] RETSL's notice requirements," and that it "cannot ignore the fact that the Bureau made no effort, let alone a reasonable one, to ascertain a proper address for service upon Hempfield 115 Trust after multiple notices that had been sent to [Will] Sanders[4] were returned to the Bureau as undeliverable." *Hempfield 115 Tr. v. Westmoreland Cnty. Tax Bureau* (Pa. Cmwlth. No. 989 C.D. 2022, filed June 20, 2025), slip op. at 5-6. Yet the Majority concludes that this Court should disregard the Bureau's failure to comply with the RETSL's statutory notice requirements merely because Common Pleas believed that the Property's *tenant* gave Appellant actual notice of the upset sale.[5] The Majority further reasons that because Section 607.1(a) of the RETSL does not impose any duties upon a tax claim bureau until it has unsuccessfully fulfilled its Section 602-based mailing duties, and actual notice cures *any* service defects for the notices mailed pursuant to Section 602 of the RETSL, then actual notice *also relieves* the tax claim bureau of any need to conduct additional reasonable efforts pursuant to Section 607.1(a) of the RETSL. *See Hempfield 115 Tr.*,

---

[4] The Westmoreland County Recorder's Office named Hempfield 115 Trust as the Property's owner and identified an individual named Will Sanders (Sanders) as Hempfield 115 Trust's trustee. Jan Ondra appeared in Common Pleas and stated that he had become the Property's trustee in Sanders' stead after Hempfield 115 Trust had purchased it in 2012.

[5] The Dissent acknowledges that it is within Common Pleas' province to determine credibility; however, the Dissent contends that, in this instance, this Court should not have reached the issue given Kuchar's testimony that the Bureau did not even attempt to comply with its statutory mandates.

AEC - 3

slip op. at 7-8. However, the Bureau had no way of knowing that Appellant was given actual notice at the time that **it was required** to conduct its additional reasonable efforts. Accordingly, said actual notice could not have relieved the Bureau of its statutorily mandated duty. Nonetheless, even though the Bureau did not conduct the required reasonable efforts to locate the Property owner, it authorized the sale of the Property knowing that the Property owner did not have written notice of the tax sale.

Making the Majority's conclusions even more untenable is the fact that "[o]n December 17, 2012, a deed was recorded with the Westmoreland County Recorder's Office that named Hempfield 115 Trust as the owner of the Property and, in addition, identified an individual named Will Sanders as Hempfield 115 Trust's trustee." *Hempfield 115 Tr.*, slip op. at 1-2. It is undisputed that the Bureau attempted to send its Section 602-based written notice to Will Sanders. However, the actual notice was given to Appellant, who the Bureau was not even aware had become the Property's trustee after Hempfield 115 Trust had purchased it in 2012. *See Hempfield 115 Tr.*, slip op. at 3. Further, there is no verification as to when this change occurred, or any documentation substantiating this assertion, and Appellant's assumption of those trustee duties had not been memorialized through a new deed. *See id*. Notwithstanding, the Majority insists that actual notice to Appellant relieved the Bureau of its duty to conduct reasonable efforts to locate the Property's recorded owner, Will Sanders.

Moreover, the Majority's ruling has eliminated the General Assembly's unambiguous statutory mandate to provide a property owner 30 days advance written notice of the sale of the owner's property and further eliminated the General Assembly's additional measure of protection of conducting reasonable efforts to locate the property owner if the first required notice was returned "to prevent the deprivation of property without due process." *Est. of Marra v. Tax Claim Bureau of Lackawanna Cnty.*, 95 A.3d 951, 956 (Pa. Cmwlth. 2014).

The Majority relies upon *Wells Fargo Bank of Minnesota, NA v. Tax Claim Bureau of Monroe County*, 817 A.2d 1196 (Pa. Cmwlth. 2003); *Sabbeth v. Tax Claim Bureau of Fulton County*, 714 A.2d 514 (Pa. Cmwlth. 1998); and *In re Consolidated Reports & Return by Tax Claims Bureau of Northumberland County of Properties*, 132 A.3d 637 (Pa. Cmwlth. 2016) (en banc) (*Appeal of Neff*), to support its position that actual notice cures the Bureau's undisputed noncompliance with both steps of its mandatory written notice requirements. However, as discussed further below, the cited cases are clearly distinguishable from the instant case because herein, the Bureau, knowing that the first required mailing was returned, boldly *did not do anything further*. *See* R.R. at 26. It is undisputed that **the government knew** the Property owner was not provided written notice. In flagrant disregard of its legal duty, the Bureau authorized the sale to take place. Due process requires notice reasonably calculated to inform a property owner before it authorizes the sale of the property owner's property. Neither the local governmental agency nor this Court has the authority to ignore constitutional protections or the General Assembly's mandates.

In *Wells Fargo*, this Court determined that posting the property and publishing notice of the sale, albeit in the wrong property owner's name, constituted constructive notice of the sale, and, thus, was a technical defect, not a failure to publish or post. In *Sabbeth*, this Court held that the posting of the property and the certified mail delivered to the property owner's office constituted implied actual notice because the property owner worked across the street from the property and left the certified mail unopened on her desk until after the tax sale. Finally, in *Appeal of Neff*, the property owner testified that she took down the posting from her house. In none of those cases was actual notice established by the testimony of a third party who claimed to have verbally notified the property's owner.

Importantly, "the collection of taxes may not be implemented without due process of law." *Husak v. Fayette Cnty. Tax Claim Bureau*, 61 A.3d 302, 312 (Pa.

AEC - 5

Cmwlth. 2013). "[S]trict compliance with the [RETSL's] notice provisions is essential to prevent the deprivation of property without due process." *Est. of Marra*, 95 A.3d at 956.

> Due process is satisfied when the [tax claim b]ureau, before commencing with a tax sale, "provide[s] '**notice reasonably calculated**, under all the circumstances, **to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections**.'" [*Jones v. Flowers*, 547 U.S. 220, 226 (2006)] (quoting *Mullane v. Cent*[.] *Hanover Bank & Tr*[.] *Co.*, 339 U.S. 306[, 314] . . . (1950)).

*Molchan v. Mercer Cnty. Tax Claim Bureau*, 319 A.3d 633, 638 (Pa. Cmwlth. 2024) (emphasis added) (quoting *Appeal of Neff*, 132 A.3d at 644). As the United States Supreme Court observed: "It is unlikely that a person who actually desired to inform an owner about an impending tax sale of a house would do nothing when a certified letter addressed to the owner is returned unclaimed." *Jones*, 547 U.S. at 221.

In *George v. Delaware County Tax Claim Bureau*, 323 A.3d 106 (Pa. Cmwlth. 2024), this Court recently explained:

> "A presumption of regularity attaches to tax sale cases. However, **once [challenged], the burden shifts to the tax claim bureau to show that proper notice was given**." *Gutierrez* [*v. Wash. Cnty. Tax Claim Bureau*], 260 A.3d [291,] 295 (Pa. Cmwlth. 2021) (citation omitted). "It is well settled that the notice provisions of the [RETSL] are to be strictly construed and that **strict compliance with the notice provisions is essential to prevent the deprivation of property without due process**." *In re Tax Sale of Real Prop*[.] *Situated in Jefferson* [*Twp*.], 828 A.2d 475, 479 (Pa. Cmwlth. 2003) (citing *Murphy v. Monroe* [*Cnty.*] *Tax Claim Bureau*, 784 A.2d 878 (Pa. Cmwlth. 2001)).
>
> **The purpose of a tax sale is not to strip an owner of his property but rather to ensure that the tax on the property is collected**. *Murphy* . . . , 784 A.2d at 883. At a minimum, due process requires that if reasonably possible, a government must notify an owner before his property is sold at an upset tax sale. *Id*. "**A failure by a tax claim bureau**

**to comply with *all* the statutory notice requirements ordinarily nullifies a sale**." *Cruder v. Westmoreland [Cnty.] Tax Claim Bureau*, 861 A.2d 411, 415 (Pa. Cmwlth. 2004).

*George*, 323 A.3d at 109-10 (bold and italic emphasis added). Accordingly,

> **[i]n all tax sale cases**, the tax claim bureau "**has the burden of proving compliance with the statutory notice provisions**." *Krawec v. Carbon [Cnty.] Tax Claim Bureau*, 842 A.2d 520, 523 (Pa. Cmwlth. 2004). Section 602 [of the RETSL] requires **three different forms** of notice to property owners prior to an upset tax sale: **publication**, **posting**, **and mail**. "**If any of the three types of notice is defective**, **the tax sale is void**." *Gladstone v. Fed[.] Nat[ʾl] Mortg[.] Ass[ʾn]*, 819 A.2d 171, 173 (Pa. Cmwlth. 2003).

*In re Sale of Tax Delinq. Prop. on Oct. 19, 2020*, 308 A.3d 890, 898 (Pa. Cmwlth. 2024) (footnote omitted) (quoting *Appeal of Neff*, 132 A.3d at 644-45 (emphasis added; footnote omitted)). Ultimately, "**the courts are responsible for applying the [RETSL] in such a manner as to afford property owners due process of law with respect to tax sales**." *Schooley v. Beaver Cnty. Tax Claim Bureau*, 4 A.3d 797, 800 (Pa. Cmwlth. 2010) (emphasis added).

Here, the Property's tenant, who has no duty to carry out the Bureau's statutory mandates, saw the tax sale posting on the Property and attended the tax sale to buy the Property, the Property owner lost its Property, and the sale was upheld because of the tenant's testimony. Glaringly absent is evidence that the Bureau fulfilled its statutory prerequisite of providing notice "to prevent the deprivation of property without due process[,]" *George*, 323 A.3d at 109 (quoting *Gutierrez*, 260 A.3d at 295), which it was required to do after Appellant challenged the tax sale by filing a PETITION FOR RULE TO SHOW CAUSE TO SET ASIDE TAX SALE (Petition to Set Aside the Tax Sale). While the Dissent makes no determination as to whether Appellant received actual notice, it maintains that this Court should not reach that issue in the face of the Bureau's admission that it did *not* comply with the RETSL's mandatory notice

requirements in the first instance. It bears noting that the facts herein clearly reveal the far-reaching consequences of the Majority's holding, i.e., the Bureau has three types of notice it **must** by statute provide, Appellant challenged the Bureau's compliance therewith, and the Bureau conceded that it failed to comply with two of the three notice requirements, yet the Property owner lost its real estate and the sale was upheld based solely on the testimony of a disgruntled tenant who attended the tax sale and bid on the Property in hopes of buying it. The egregiousness of this outcome is exactly why it is imperative that once a tax sale is challenged, the Bureau **must** prove that it complied with **all** the RETSL notice requirements **in every case**.

In *Genser v. Butler County Board of Elections*, 325 A.3d 458 (Pa. 2024), our Supreme Court declared:

> Our decision in [*Pennsylvania Democratic Party v. Boockvar*, . . . 238 A.3d 345 (2020) (*Pa. Democratic Party*)] addressed only "the 'notice and opportunity to cure' procedure **sought by [the p]etitioner**." *Id.* (emphasis added). . . . Our concern in *Pa. Democratic Party* was whether the spirit of the Election Code or [a]rticle I, [s]ection 5 of [the Pennsylvania] Constitution[, PA. CONST. art. I, § 5,] **mandated** a notice and curing policy for defective mail ballots. [The Pennsylvania Supreme Court] concluded that *the Constitution left the task to the legislature and that the Election Code "does not provide for the 'notice and opportunity to cure' procedure sought by [the p]etitioner."* [*Pa. Democratic Party*, 238 A.3d] at 374. . . . [*Our Supreme Court*] *rejected* [*the p*]*etitioner's attempt to impose such procedures on county election boards through judicial means*. *Id.*

*Genser*, 325 A.3d at 475 (italic emphasis added; footnote omitted). Similarly here, there is no provision in the RETSL that allows actual notice to cure any defects in its notice requirements. Rather, the RETSL mandates that the Bureau comply with **_all_** of its notice provisions before any tax sale can occur.

This Court's duty is to apply the law, not to enact it. The General Assembly has very clearly articulated its requirement that tax claim bureaus comply

with the RETSL's notice provisions **before** any tax sale can occur. In addition, the United States Supreme Court has ruled that due process is required **before** the government may take a person's real property. *See Jones*.

As the Pennsylvania Supreme Court stated: "Somehow, over the years, taxing authorities have lost sight of the fact that it is a momentous event under the United States and the Pennsylvania Constitutions when a government subjects a citizen's property to forfeiture for the non-payment of taxes." *Tracy v. Cnty. of Chester*, 489 A.2d 1334, 1339 (Pa. 1985); *see also Husak* (affirming the trial court's setting aside a tax sale where the tax claim bureau failed to make any additional notification efforts). Indeed, according to Kuchar, the Bureau does not even attempt to comply with Section 607.1(a) of the RETSL when certified mail is returned to sender as not deliverable as addressed and/or not able to be forwarded. *See* R.R. at 28. If the Bureau is not required to establish compliance with the RETSL in every case, the Bureau has no reason to comply in the first instance.

Given the Bureau's failure to establish on the record that it complied with *all* of the RETSL's statutory notice requirements, I would reverse Common Pleas' order denying Appellant's Petition to Set Aside Tax Sale.

_____
ANNE E. COVEY, Judge